USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/19/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America,

–v–

Dante Stephens,

Defendant.

15-cr-95 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

  At the hearing on March 6, 2020, the Court reviewed Magistrate Judge Fox's bail determination *de novo* and concluded that the Defendant failed to establish by clear and convincing evidence that he did not pose a danger to the community. *See* March 6 Hr'g Tr. at 31:11–32:1; *see also* 18 U.S.C. § 3143(a)(1); Fed. R. Crim. P. 32.1(a); 18 U.S.C. § 3142. Accordingly, the Court ordered him remanded to the custody of the Bureau of Prisons ("BOP").

  On March 16, 2020, the Defendant filed an emergency motion for reconsideration of his bail conditions. *See* Dkt. No. 2789-1. The Court GRANTS that motion and orders the Defendant released subject to the additional conditions of 24-hour home incarceration and electronic location monitoring as directed by the Probation Department.

  The Court concludes that reconsidering the Defendant's bail conditions is appropriate in light of circumstances that have changed since the March 6 hearing. *Cf.* 18 U.S.C. § 3142(f) (A detention hearing under 18 U.S.C. § 3142 "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."). These changed circumstances are two-fold. First, the strength of the primary evidence relied upon by the Government to demonstrate the danger the Defendant poses to the community has been

undermined by new information not available to either party at the time of the March 6 hearing. Indeed, while the Government argued at the hearing that the Defendant's "possession of a loaded firearm in proximity to drugs . . . is an inherently dangerous activity" that weighed in favor of his detention, *see* March 6 Hr'g Tr. at 8:23–9:3, the Court has since learned that the arresting officer—who will not testify for the Government at the hearing on the Defendant's alleged violation of supervised release—initially identified a *different* individual as holding the bag that contained the firearm. *See* Dkt. No. 2789-1 at 2. Though the Government proffers additional evidence that it will introduce at the hearing,[1] this new information nonetheless indicates that the Government's case is weaker than it believed it to be at the March 6 hearing and bears upon the Court's prior conclusion that the Defendant failed to establish by clear and convincing evidence that he did not pose a danger to the community.

Second, since the March 6 hearing, the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic has become apparent. Although there is not yet a known outbreak among the jail and prison populations, inmates may be at a heightened risk of contracting COVID-19 should an outbreak develop. *See, e.g.*, Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infectious Diseases 1047, 1047 (Oct. 2007), https://doi.org/10.1086/521910 (noting that in jails "[t]he probability of transmission of potentially pathogenic organisms is increased by crowding, delays in medical evaluation and treatment, rationed access to soap, water, and clean laundry, [and] insufficient infection-control expertise"); *see also* Claudia Lauer & Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*, Associated Press (Mar. 7, 2020). The magnitude of this risk has grown exponentially since the March 6 hearing before this Court; at the end of the day on March 6, New York State had 44 confirmed cases of COVID-19, *see* Andrew Cuomo (@NYGovCuomo),

---

[1] The Government proffers that at the hearing it will offer, among other evidence, video surveillance footage, testimony of an NYPD officer who was present when the firearm was recovered and will testify that he recognizes the Defendant in the surveillance video as the individual carrying the bag containing the firearm, and testimony from the Defendant's Probation Officer, who will testify that she also identified the Defendant in the video as the individual carrying the bag containing the firearm.

Twitter (Mar. 6, 2020, 4:51 PM), https://twitter.com/NYGovCuomo/status/12360466682 20567553, but by the end of the day on March 18, that number had climbed to 2,382, *see* Mitch Smith, *et al.*, *Tracking Every Coronavirus Case in the U.S.: Full Map*, N.Y. Times, Mar. 18, 2020, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html.  Though the BOP has admirably put transmission mitigation measures in place, *see* Federal Bureau of Prisons, *Federal Bureau of Prisons COVID-19 Action Plan*, https://www.bop.gov/resources/news/20200313_covid-19.jsp, in the event of an outbreak at the Metropolitan Correctional Center ("MCC") (where the Defendant is currently being detained), substantial medical and security challenges would almost certainly arise.  A comprehensive view of the danger the Defendant poses to the community requires considering all factors—including this one—on a case-by-case basis.  *See, e.g.*, *United States v. Raihan*, No. 20-cr-68 (BMC) (JO), Dkt. No. 20 at 10:12–19 (E.D.N.Y. Mar. 12, 2020) (deciding to continue a criminal defendant on pretrial release rather than order him remanded to the Metropolitan Detention Center due, in part, to the Magistrate Judge's recognition of the fact that "[t]he more people we crowd into that facility, the more we're increasing the risk to the community").

Taken together, these changed circumstances necessitate a reconsideration of the Defendant's bail conditions.  The question of whether the Defendant had met his burden to establish by clear and convincing evidence that he did not pose a danger to the community was a close one at the March 6 hearing.  Indeed, Defense counsel presented ample evidence at that hearing that aside from the arrest from which the alleged violation of supervised release arises, the Defendant does not have a violent background: no prior convictions involved violent conduct or gun charges.  *See* March 6 Hr'g Tr. at 16:18–17:14.  In light of the changed circumstances discussed above, the weight of the evidence now clearly and convincingly tips in the Defendant's favor.  Accordingly, based on the evidence and arguments presented at the March 6 hearing coupled with the reasons stated above, the Court concludes that the Defendant has now established by clear and convincing evidence that he does not pose a danger to the community.

Even if the Court were to conclude that changed circumstances did not compel reconsideration of the Defendant's bond conditions, a separate statutory ground advanced by the Defendant would require his release here. 18 U.S.C. § 3142(i) provides that, where a detention order has been issued, "a judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." The Government does not challenge the application of this provision—indeed, it does not address it at all in opposing the Defendant's motion, *see generally* Dkt. No. 2791—and the Court thus concludes that it applies here.

The text of Section 3142(i) provides that the Court may temporarily release a detained defendant to the custody of an "appropriate person" where a "compelling reason" necessitates such release. Compelling reasons may exist where release is necessary for the preparation of the defendant's defense, *see* 18 U.S.C. § 3142(i), or where the defendant's serious medical conditions warrant release, *see, e.g.*, *United States v. Rebollo-Andino*, 312 F. App'x 346, 348 (1st Cir. 2009) (explaining that a defendant who is denied bail "retains the ability to request[,] . . . in extraordinary circumstances, . . . temporary release under § 3142(i)" should future developments with respect to his medical conditions so warrant); *see also United States v. Birbragher*, No. 07-cr-1023-(LRR), 2008 WL 1883504, at *2 (N.D. Iowa Apr. 25, 2008) (describing *United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993), and *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002), as cases in which courts found "compelling reason" to temporarily release defendants due to the defendants' serious medical issues).[2] Furthermore, case law suggests that

---

[2] In a similar context, the Second Circuit has described "exceptional" reasons permitting the release of a defendant subject to mandatory detention—arguably a higher standard than "compelling" reasons—as those that "present a unique combination of circumstances giving rise to situations that are out of the ordinary." *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991); *see also* 18 U.S.C. § 3145 ("A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."). The Second Circuit has explained that determining whether a given circumstance presents exceptional reasons under Section 3145 requires a case-by-case evaluation by the district judge and that the district judge's discretion is "constrained only by the language of the statute: 'exceptional reasons.'" *DiSomma*, 951 F.2d at 497.

4

family members may constitute "appropriate persons" where the defendant is released to relatives and placed under house arrest. *See Cordero Caraballo*, 185 F. Supp. 2d at 145 (releasing the defendant, who the court would have detained on dangerousness grounds, to the custody of his mother and grandmother on 24-hour house arrest due to his severe injuries). "A defendant has the burden of showing that temporary release is 'necessary . . .' under Section 3142(i)." *See United States v. Dupree*, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011).

       The Court concludes that the Defendant has met his burden by demonstrating at least one compelling reason that also necessitates his release under this provision. Namely, the obstacles the current public health crisis poses to the preparation of the Defendant's defense constitute a compelling reason under 18 U.S.C. § 3142(i). *See id.* (providing that the Court "may . . . permit the temporary release of [a] person, in the custody of a United States marshal or another appropriate person, to the extent [it] determines such release to be necessary for preparation of the person's defense"). The spread of COVID-19 throughout New York State—and the country—has compelled the BOP to suspend all visits—including legal visits, except as allowed on a case-by-case basis—until further notice. *See* Federal Bureau of Prisons, *Federal Bureau of Prisons COVID-19 Action Plan*, https://www.bop.gov/resources/news/20200313_covid-19.jsp (explaining that "legal visits will be suspended for 30 days" nationwide and that "case-by-case accommodation will be accomplished at the local level"). This suspension impacts the Defendant's ability to prepare his defenses to the alleged violation of supervised release in advance of the merits hearing scheduled for March 25, 2020. Defense counsel represents that after contacting the MCC Legal Department to arrange legal calls with the Defendant, "the MCC did not permit a legal call to Mr. Stephens." Dkt. No. 2789-1 at 10. He further proffers that other defense counsel have faced similar obstacles in attempting to communicate with their clients. *Id*. The Government neither responds to nor contests these factual representations, and so the Court relies upon them here. *See generally* Dkt. No. 2791. Thus, the Court concludes that these circumstances necessitate the Defendant's temporary release. *See United States v. Persico*, No. 84-cr-809 (JFK), 1986 WL 3793, at *1 (S.D.N.Y. Mar. 27, 1986) (describing cases in which

"temporary releases of defendants therein were granted prior to trial in order to facilitate the defendants' expeditious preparation for trial and thus to promote the prompt disposition of the charges against each defendant" where "[t]he concern in each case was that, given the admittedly limited access to telephones and attorney conference rooms at the detention facilities, the effective preparation of a defense might have been impossible in the short time available before the commencement of trial").[3]

The Court further concludes that the Defendant's mother constitutes an "appropriate person" within the meaning of this provision so long as the Defendant is subject to home incarceration with GPS monitoring at the residence he shares with her. *See Cordero Caraballo*, 185 F. Supp. 2d at 146 (finding that the defendant's mother and grandmother "qualif[ied] as third-party custodians" for purposes of the release of the defendant).

In sum, circumstances that have changed since the March 6 hearing warrant reconsideration of the Defendant's bail conditions, and the Court concludes that, in light of these changed circumstances, the Defendant has established by clear and convincing evidence that he does not pose a danger to the community. Furthermore, even were the Court to conclude that reconsideration was not warranted, compelling reasons would necessitate the Defendant's temporary release under 18 U.S.C. § 3142(i). Accordingly, the Court orders the Defendant released from the custody of the Bureau of Prisons to the custody of his mother, with whom he lives, subject to the additional conditions of supervised release of 24-hour home incarceration at his current residence in the Bronx and electronic location monitoring as directed by the Probation Department.

SO ORDERED.

---

[3] The Defendant also argues that the current public health crisis itself provides an additional compelling reason necessitating his release for all the reasons already articulated above. *Cf. Rebollo-Andino*, 312 F. App'x at 348 (explaining that "extraordinary circumstances" related to medical conditions may necessitate temporary release under § 3142(i)). The Court need not decide this additional factor here because its determination that release is necessary for the preparation of the Defendant's defense is sufficient under § 3142(i).

Dated: March __18__, 2020
       New York, New York

_____
ALISON J. NATHAN
United States District Judge

7